*Orphans' Court, Dauphin County, June 14th, 1863.*

### IN THE MATTER OF FOX, GUARDIAN OF FOX.

A. bequeathed a sum of money for the purchase of a house and lot for the use and benefit of his wife and children "during the period she remains my widow, and after her death the same shall descend to my heirs according to law," and in a subsequent part of his will referred to the above bequest, providing that "such life-estate in said house directed to be purchased and the annual interest aforesaid to be in lieu of dower."

*Held,* that the widow took an estate in such house and lot *durante viduitate,* under the rule that " a clearly expressed intention in one portion shall not yield to a doubtful construction in another portion of the same instrument."

That in Pennsylvania an estate in realty *durante viduitate* can be created without a limitation over upon the marriage of the widow, *aliter* as to personalty.

That upon the widow's marriage the land descended to and became vested in the heirs at law *qua* heirs; as devisees they would only take upon the widow's death.

BY THE COURT.—The auditor has by his report made a proper disposition of all the points in controversy in this case

[In the Matter of Fox, Guardian of Fox.]

with a single exception. Thomas E. Fox, deceased, by his will directs all of his estate to be converted into money, and orders a house to be purchased in Hummelstown, at a cost not exceeding eight hundred dollars, for the use and benefit of his wife and children, " *during the period she remains my widow,* and after her death the same shall descend to my heirs according to law." Does this give to the widow an estate for life, or during widowhood only? The devise is in nowise qualified by any other expressions in the will, except in the seventh clause, where the testator, after directing the interest of one-third of his estate to be paid annually to his wife during her life, and the principal on her death to descend to his heirs according to law, says, " *Such life-estate* in the said house directed to be purchased, and the annual interest aforesaid to be in lieu of dower." Does this qualify the previous devise during widowhood, and convert it into an absolute life-estate? If it does the auditor is right; if not, he has fallen into an error. In construing wills it is our duty to give effect to all the words, without rejecting or controlling any of them, if it can be done by a reasonable construction, not inconsistent with the manifest intent of the testator, and every portion of the instrument must be made to have its just operation, unless there arise some invincible repugnance, and every expressed intention of the testator must be carried out where it can be. If possible some effect shall be given to each distinct provision of the will, rather than it shall be annihilated, and the plain and unambiguous words of the will must prevail, and are not to be controverted by any conjecture or doubtful construction, growing out of the situation or condition of the testator, his family, or property (Redfield on Wills, rules 12, 14, 16, 17 and 19, p. 430 to 435). And a clearly expressed intention in one portion of the will is not to yield to a doubtful construction in any other portion of the instrument (Redfield, p. 434).

Applying these rules to the will of Mr. Fox, and giving every expression and devise its due weight, what estate did his widow take in the house? Unless we reject the expression " during the period she remains my widow," and substitute therefor " during her natural life," there can be no doubt that she took an estate during widowhood only, as at first directed in the will, and the rule which declares " that a clearly expressed intention in one portion shall not yield to a doubtful construction in another portion of the same instrument," prevents our changing the character of this devise by the allusion to the life-estate previously granted. It was not necessary to qualify that part of the gift by again repeating " during the period she remains my widow," or during widowhood. The character of the devise had been explained before, and could not be misunderstood; it

did not need repetition. The last will must always prevail, and even the last clause in the same will, but that rule is never resorted to except where the clauses are clearly irreconcilable. In the absence of clear contradiction, every clause and sentence must have its full force. It is said, however, that as there is no limitation of this estate over to any other person, on the woman ceasing to be the testator's widow, but only on her death, it must be considered to be held out in *terrorem* merely, and not as creating an estate *durante viduitate*. It must be borne in mind that this is a devise of land, and not a bequest of personal property. Had it been the latter a limitation over is indispensable, but is never required to make good a devise, or even a charge on real estate (1 Roper on Legacies, 511; 3 Atk. 330; 1 Atk. 361; 5 Vin. Abt. 343, pl. 41; 3 Ves. Jr. 89; 2 Dick. 719; 2 Atk. 590; Co. Lit. 206; Jarman on Wills, vol. 1, p. 698 [836]; 1 Story's Eq. Jur. § 288).

Although in our State almost every question continued to be agitated from time to time, and is considered open, yet if any one *is* settled, it is, that a devise during widowhood is valid without any limitation over, whilst a similar bequest of personalty, not charged on land, is void without a limitation over on the widow marrying (Bennett *v.* Robinson, 10 Watts, 348; Hoopes *v.* Dundass, 10 Barr, 75; Commonwealth *v.* Stauffer, Idem, 350; McCullough's Appeal, 2 Jones, 197; Cornell *v.* Lovett's Exrs., 11 Casey, 100). The history of this distinction between bequests of personal property and devises of real estate is given in numerous cases, such as Starkpole *v.* Bramont (3 Ves. 2, 96), and in our own books also, and is shown to have originated in the ecclesiastical courts blindly following the letter of the civil law, without consulting its reason or history, in distributing personal effects, or applying bequests thereof, which the courts of law afterwards followed in order to prevent a clashing of jurisdiction, whilst devises of real estate were always governed by the rules of the common law, which never held that a condition of remaining a widow was inserted merely *in terrorem*, but was a valid and binding condition on which the party held the estate, which immediately terminated and descended to the heirs-at-law on the widow ceasing to answer the description, or violating the condition of the devise. The courts of law and equity have been struggling for many years to escape from the rule which requires a limitation over in order to render the condition valid, and recently we have a case where the Chancellor declares that "the law recognizes that species of interest in the widowhood of a wife as makes it lawful for the husband to restrain a second marriage, but not so as to any other woman" (10 Law & Eq. R. 139, 143; Lloyd *v.* Lloyd). This might account for the decision in Hoopes *v.* Dundass (10 Barr, 75), as that was a bequest to a

daughter-in-law. The judge does not, however, take that distinction in his opinion, but decides the case on the doctrine then settled in England. This devise can scarcely turn on condition precedent, or subsequent, but is a gift to the wife " during the period she remains my widow," the same in effect as " so long as she remains my widow;" on marrying again she ceases to answer the description of the person who can hold the property, and the estate immediately descends to the heirs-at-law. The auditor says that the gift over cannot take effect until after the widow's death, which shows that the intention was to give her an estate for life—it cannot be in abeyance. That is true; the devisees over cannot take *under* the *will* until the event happens. But it so chances in the present case that the same persons are heirs-at-law ; they therefore take immediately by descent, and not by purchase. Had the devisees over been strangers to the blood of the testator, they could not have taken until Mrs. Fox's death ; but in the meantime the property would have descended to the heirs-at-law, who would have held, as such, until the event happened. She could not hold after she ceased to answer the description of the devise. She forfeited the estate by marrying, and ceasing to be the widow of the testator, and this forfeiture of interest is fully recognized and held valid for the reasons given by Ch. J. Gibson, in Commonwealth *v.* Stauffer, and McCullough's Appeal, already cited.

I am therefore of the opinion that the wards of John M. Fox were, on the marriage of their mother, entitled to the immediate possession of the house and lot in Hummelstown, as heirs-at-law of Thomas E. Fox, deceased; and that it was the duty of their guardian, John M. Fox, to have taken immediate measures to recover the same for their use, or to have obliged their mother to pay a reasonable rent for the enjoyment of the property.

This by possibility may not be the same sum that would be exacted from a stranger, provided the children lived with her on the premises after her marriage, as the house and lot, when purchased, are to be for the use of the children as well as of the wife during her widowhood. If they lived on the property with and were maintained by the mother, that might lessen the value of the rent, as they had a right to remain in the house. If they paid to their mother full boarding, the same as if they had no interest in the house, she should be charged full rent. The sum must be fixed and ascertained by the auditor on the evidence which will be adduced before him. We refer the case to the same auditor to correct the report on the point indicated. All other exceptions are overruled.